**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LANDMARK AMERICAN INSURANCE COMPANY** | § § § | |
| **Plaintiff** | § § | **CIVIL ACTION NO. _____** |
| **vs.** | § § | **ACTION FOR DECLARATORY RELIEF** |
| **HOPE HAVEN, LLC** | § § | |
| **Defendant** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Landmark American Insurance Company ("Landmark") files this Original Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 and, in support, respectfully shows the Court as follows:

**I. THE PARTIES**

1.       Plaintiff Landmark is a New Hampshire corporation that conducts insurance business in the State of Texas.  Landmark's principal place of business is in Georgia.

2.       Defendant Hope Haven, LLC ("Hope Haven") is a Texas limited liability company doing business in Texas.  Its managing member is David Denenburg, who is a resident of Houston, Texas.   Hope Haven can be served through its registered agent:  David Denenburg, 3262 Westheimer Rd., Suite 504, Houston, Texas 77098.

**II. JURISDICTION**

3.       The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201 because complete diversity exists between the parties, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs because Defendant Hope Haven is seeking damages

from Landmark far in excess of $75,000. Landmark seeks declaratory relief pursuant to 28 U.S.C. § 2201, *et seq*., the Federal Declaratory Judgment statute.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the property at issue is located in this district.

### III.  <u>INTRODUCTION AND BACKGROUND</u>

5.      The property at issue is a vacant hospital building located at 6160 South Loop East, Houston, TX  77087 (known as Pine Valley Specialty Hospital) (hereafter the "Property"), which was insured under a primary commercial property policy issued by Landmark, Policy No. LHD905572, with original effective dates of September 14, 2018 to September 14, 2019, but was terminated early on February 1, 2019 (the "Landmark Policy").  At the time the Property was insured under the Landmark Policy, it was owned by CAM Houston LLC ("CAM Houston"), the Named Insured on the Landmark Policy.  CAM Houston sold the Property to Defendant Hope Haven.  Hope Haven's purchase of the Property closed on or about January 31, 2019 and CAM Houston cancelled the Landmark Policy effective February 1, 2019.

6.      This declaratory judgment action involves an insurance claim for vandalism and theft at the Property, which was reported to Landmark as having occurred on October 4, 2018 – about three weeks after the Landmark Policy incepted.

7.      CAM Houston made the insurance claim on Landmark, but later assigned the claim for the alleged vandalism and theft loss of October 4, 2018 to Hope Haven at or about the time Hope Haven closed on the purchase of the Property.[1]  Accordingly, Hope Haven is an assignee of CAM Houston's vandalism and theft claim allegedly occurring on October 4, 2018.

---

[1] Landmark agreed to the assignment of the claim from CAM Houston to Hope Haven, but Landmark's agreement to the assignment was made without disclosure by CAM Houston and Hope Haven of material and pertinent facts.

A.      **Vandalism and Theft Claim at Issue**

8.      On October 18, 2018, CAM Houston provided notice to Landmark of a vandalism and theft loss at the Property that allegedly occurred on October 4, 2018.  (*See* Property Loss Notice of 10/18/18, attached as **Exhibit A**). While CAM Houston reported the alleged vandalism and theft loss to Landmark, the person who reported the burglary at the Property to the Houston Police Department ("HPD") was Ryan David Denenburg ("Denenburg"), the managing member of Hope Haven.

9.      Denenburg reported the burglary to HPD on October 4, 2018, but he could not identify the actual date of the burglary, and in fact, October 4, 2018 is not the date of the burglary. When Denenburg reported the burglary to HPD, he also reported that it occurred ***between June 8, 2018 and October 1, 2018***.  (*See* Certified copy of HPD Report 1258231-18, attached as **Exhibit B**) (emphasis added).  In sum, the actual date of the burglary is unknown, except that it did <u>not</u> occur on October 4, 2018 as reported to Landmark, and it did not occur after October 1, 2018.

10.      The HPD Report also states "Complainant [Denenburg] stated that the vacant hospital ***that he owns*** had been burglarized (copper pipe stolen) Unknown Suspect No Arrest." (**Ex. B**) (emphasis added).  The HPD Report further states that the stolen property was an "unknown amount of copper pipe" and there was a "courtyard window 4X2 (smashed)."  (**Ex. B.**)

11.      After the alleged vandalism and theft loss was reported to Landmark on October 18, 2018, Landmark engaged the independent adjusting firm Engle Martin & Associates, LLC ("EMA") to assist in the claim investigation and adjustment.  CAM Houston instructed EMA to communicate with Denenburg because it was represented that Denenburg was acting as CAM Houston's "representative" on the claim.  CAM Houston and Denenburg have both referred to the

vandalism and theft loss at issue as occurring on October 4, 2018, even though that date of loss was not accurate.

**B.**     **Prior Losses and Damage at the Property**

12.     Although there had been at least two other burglaries at the Property within the five months prior to the inception of the Landmark Policy on September 14, 2018, both of which were known to CAM Houston and to Denenburg, neither CAM Houston nor Denenburg disclosed to Landmark during the claim investigation that there had been prior burglaries resulting in vandalism and theft losses to the Property.[2]

13.     Landmark learned of the prior burglaries because EMA discovered them during its claim investigation.   The prior burglaries at the Property occurred in April 2018 and in May 2018 and both had been reported to HPD.  (*See* Certified copies of the HPD Reports for the April 2018 and May 2018 burglaries, attached as **Exhibits C and D** respectively).   Both of those burglaries clearly preceded the inception of the Landmark Policy on September 14, 2018.   The prior burglaries resulted in significant theft of items and vandalism to the Property.    (*See id.*).  Landmark did not insure the Property at the time of those prior burglaries.   It is unknown to Landmark if the Property was insured at the time of those prior burglaries.

14.     Landmark also learned through EMA's investigation of the alleged October 4, 2018 vandalism and theft loss that the Property had sustained significant damage from Hurricane Harvey

---

[2]  CAM Houston also failed to disclose the prior burglaries to Landmark when CAM Houston purchased the Landmark Policy, as well as when the inspector hired by Landmark to perform an underwriting survey for the Policy was at the Property.  During the underwriting survey, the representative for CAM Houston and Denenburg denied the inspector access to the interior of the Property and upon information and belief, further advised the inspector that there had not been any vandalism and theft losses at the Property.

in August 2017 and that such damage had never been repaired by CAM Houston.   Landmark did not insure the Property at the time of Hurricane Harvey.[3]

**C.**   **Hope Haven's Damages Estimate is Improper**

15.     During the claim adjustment, Denenburg and Hope Haven retained the services of a Public Adjuster to assist with the alleged October 4, 2018 vandalism and theft claim made on Landmark.   Although Hope Haven/Denenburg and the Public Adjuster are fully aware and knowledgeable about the pre-existing burglaries at the Property that resulted in vandalism and theft losses, as well as the unrepaired Hurricane Harvey damage, they nevertheless recently submitted a damages estimate to Landmark in the amount of about $4.9 million to pay for all of the pre-existing losses and damages occurring before Landmark's Policy incepted, as well as those damages they attribute to the alleged October 4, 2018 theft loss.

16.      It is axiomatic there can be no coverage under an insurance policy for losses and damage that pre-exist the inception of a property policy.   Nonetheless, rather than submitting to Landmark an estimate solely for the vandalism and theft loss they contend was caused by the alleged burglary of  October 4, 2018, which Denenburg explicitly reported to HPD as the alleged theft of copper pipe and a smashed window, Hope Haven and its Public Adjuster have submitted an estimate for Landmark to pay for ***all*** damage and losses at the Property.   As such, Hope Haven's estimate is improper, violates the Landmark Policy, and violates Texas law.

---

[3] At the time of Hurricane Harvey, the Property was insured under a commercial property policy obtained by the former tenant, Pine Valley Specialty Hospital, or its parent company. Pine Valley Specialty Hospital vacated the Property after Hurricane Harvey.  CAM Houston filed a lawsuit in New York on June 27, 2018 against the operator of Pine Valley Specialty Hospital for breach of their lease agreement and alleging the Property "suffered substantial damage as a result of Hurricane Harvey," and that the Property was "subjected to vandalism, break-ins and thefts, all of which has caused additional substantial damage to the Premises and the personal property thereon." CAM Houston further alleged that "since April 2018, the Premises has been vandalized, broken into, and personal property and fixtures have been stolen."

17.     The Landmark Policy provides coverage only for the loss or damage that commences during the policy period.  Further, the Landmark Policy explicitly excludes coverage for pre-existing loss and damage.

18.      As discussed above, there was no vandalism and theft loss on October 4, 2018 – that is simply the date Denenburg reported the burglary to HPD.  The HPD Report shows that Denenburg reported the burglary as occurring sometime between June 8, 2018 and October 1, 2018 (*See* **Ex. B**).  As such, there is no evidence that a loss occurred on October 4, 2018.   Moreover, because Denenburg has established that the burglary occurred sometime between June 8, 2018 and October 1, 2018, the alleged vandalism and theft loss at issue likely occurred prior to the inception of the Landmark Policy on September 14, 2018.  Hope Haven has the burden to prove that the loss or damage it is claiming commenced during the policy period.  Based on Denenburg's own admissions, Hope Haven will not be able to meet its burden.

19.     Further, the Landmark Policy contains an exclusion that specifically excludes coverage for loss or damage that pre-existed the inception of the Landmark Policy on September 14, 2018.  Therefore, the Landmark Policy does not provide coverage for the losses and damage attributable to the pre-existing burglaries of April 2018 and May 2018, and the Hurricane Harvey damage of August 2017, and any other loss or damage that pre-existed the inception of the Landmark Policy on September 14, 2018.

20.     In addition, when Denenburg reported the alleged vandalism and theft loss to HPD on October 4, 2018, he represented that ***he*** was the owner of the Property. If Denenburg was the owner of the Property at the time of the alleged loss, CAM Houston no longer owned the Property. If CAM Houston no longer owned the Property, it no longer had an insurable interest in the Property when it made its claim on Landmark on October 18, 2018.  If CAM Houston did not have

6

an insurable interest in the Property, its claim on Landmark was illegitimate and untenable, and as such, CAM Houston had no insurance claim to assign to Hope Haven.  Therefore, CAM Houston's assignment of the claim to Hope Haven is void, and accordingly, Hope Haven has no claim under the Landmark Policy.

21.     Moreover, because the Property was vacant in September 2018 when CAM Houston purchased the Landmark Policy, the Policy included two pertinent endorsements – a "Vacancy" endorsement allowing for coverage even though the premises were vacant, and because the premises were vacant, a "Protective Safeguards" endorsement requiring that the Property be secured with a security guard patrolling the building daily in order for there to be coverage for loss or damage resulting from vandalism and theft.

22.     On order to obtain the vandalism and theft coverage, CAM Houston warranted in the Landmark Policy there would be a security guard patrolling the building daily.  However, after the alleged burglary on October 4, 2018, it was disclosed to Landmark that the Property may not have been secured with a security guard patrolling the building daily.

23.     The vandalism and theft coverage that CAM Houston contracted for with Landmark was contingent on there being a security guard patrolling the Property daily.[4]  If there was not a security guard patrolling the Property daily, coverage for the claim is precluded.  Hope Haven, as CAM Houston's assignee, cannot receive coverage under the Landmark Policy for which CAM Houston did not contract.  Further, the Landmark Policy specifically excludes coverage for vandalism and theft at the Property if there was not a security guard patrolling daily.  If there was

---

[4] On information and belief, at the underwriting inspection in October 2018, it was falsely represented to Landmark's inspector that there was a security patrol at the Property 24 hours a day, seven days a week.

not a security guard patrolling the building daily, Hope Haven's claim is further excluded under the Landmark Policy.

24.     Landmark has filed this declaratory judgment action for a determination concerning these coverage issues.

### IV.  <u>SUMMARY OF COVERAGE ISSUES</u>

25.     Landmark seeks a declaration as to the following coverage issues:

26.     The Landmark Policy does not provide coverage for loss or damage that did not commence during the policy period.  Therefore, the Landmark Policy cannot provide coverage for Hope Haven's claim because Hope Haven cannot meet its burden to prove that the alleged vandalism and theft loss at issue occurred during the policy period.

27.     Even if Hope Haven could meet its burden to prove the vandalism and theft loss at issue occurred during the policy period, the Landmark Policy does not provide coverage for loss or damage that pre-existed the inception of the Landmark Policy on September 14, 2018. Therefore, the Landmark Policy does not provide coverage for Hope Haven's alleged damages, which as reflected in the recent estimate submitted by its Public Adjuster to Landmark of over $4.9 million, includes the losses and damage attributable to the  pre-existing burglaries of April 2018 and May 2018 that were reported to HPD, and the Hurricane Harvey damage of August 2017. There simply is no coverage for such pre-existing loss and damage.

28.     Denenburg's representation to HPD that he owned the Property when he reported the alleged burglary to HPD on October 4, 2018 raises a significant legal issue as to CAM Houston's insurable interest in the Property at the time it made the claim on Landmark.  If CAM Houston did not own the Property at the time of the alleged vandalism and theft loss at issue, CAM Houston had no insurable interest in the Property, and as such, its claim on Landmark was improper and illegitimate.   Accordingly, if CAM Houston did own the Property at the time of the alleged

loss, its assignment of the alleged claim to Hope Haven is illegitimate, and therefore, there can be no coverage for the claim.

29.     Lastly, the Landmark Policy did not provide coverage for loss or damage from vandalism and theft if the Property was not properly secured with a security guard patrolling daily. If the alleged theft at issue occurred when there was not a security guard patrolling the Property daily, there can be no coverage for Hope Haven's claim.

## V.   CLAIM FOR DECLARATORY RELIEF

30.     Landmark incorporates by reference the preceding paragraphs.

31.     The terms, conditions, definitions, exclusions and other provisions of the Landmark Policy are incorporated herein by reference.

32.     All conditions precedent to filing this lawsuit have occurred.

33.     The following Landmark Policy provisions and law set forth the issues on which Landmark seeks declaratory judgment pursuant to 28 U.S.C. § 2201:

**A.  The Loss or Damage Did Not Commence During the Policy Period**

34.     The Landmark Policy provides as follows:

### COMMERCIAL PROPERTY CONDITIONS

(CP 00 90 07 88)

* * *

**H.     POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.**      We will cover loss or damage commencing:
   **a.** During the policy period shown in the Declarations; and

* * *

35.     Under Texas law, an insured has the burden of showing that loss or damage to its property is covered by an insurance policy.  *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th

Cir. 2004).  If the insured satisfies this burden, the insurer has the burden of establishing that the loss or damage is excluded under the policy.  *Id*.

36.      An assignee under Texas law steps into the shoes of its assignor and takes assigned rights subject to any defenses an opposing party might assert against its assignor.  *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see also Sw. Bell Tele. Co. v. Mktg. on Hold, Inc*., 308 S.W.3d 909, 920 (Tex.2010).

37.      Therefore, as CAM Houston's assignee of the alleged vandalism and theft claim at issue, Hope Haven has the burden to prove that the loss at issue is covered by the Landmark Policy. The Landmark Policy only covers loss or damage commencing during the policy period, and the policy period incepted on September 14, 2018.

38.      Although CAM Houston, Hope Haven and the Public Adjuster all have contended that the vandalism and theft loss at issue occurred on October 4, 2018, that clearly is false for the reasons explained above.  Moreover, by its own admission, Hope Haven, through its managing member Denenburg, reported to HPD that the alleged vandalism and theft loss at issue occurred between June 8, 2018 and October 1, 2018.  Hope Haven, therefore, is unable to show that the vandalism and theft loss at issue commenced between September 14, 2018 and October 1, 2018.

39.      Accordingly, because Hope Haven is unable to meet this threshold issue for coverage, Landmark seeks a declaration that the Landmark Policy cannot apply to claim.

**B.  The Landmark Policy Excludes Coverage for Pre-Existing Loss and Damage**

40.      Even if Hope Haven could meet the threshold issue discussed above, the Landmark Policy clearly does not provide coverage for pre-existing loss or damage.  Therefore, the recent estimate of over $4.9 million dollars submitted to Landmark by Hope Haven and its Public Adjuster is improper, false, and violates the Landmark Policy and Texas law.

41.     The Landmark Policy contains a Pre-Existing Damage Exclusion endorsement as

follows:

### EXCLUSION - PRE-EXISTING DAMAGE
(RSG 96063 0216)
* * *

We will not pay for any loss or damage which occurred, existed, or commenced prior to the inception date of this Policy, whether such loss or damage was known or unknown to any Insured or party seeking recovery under this Policy. This insurance also does not apply to the following loss or damage which is likewise excluded from coverage:

(a)     Pre-existing damage which occurred, existed, or commenced, in whole or in part, prior to the inception date of this Policy;

(b)     Loss or damage which occurs during this Policy period, but was caused directly or indirectly by pre-existing damage which pre-dated this Policy;

(c)     Loss or damage resulting from pre-existing damage which occurred, existed, or commenced prior to the inception date of this Policy; or

(d)     Loss or damage which is, or is alleged to be, in the process of occurring as of the inception date of this Policy, even if the "occurrence" continues during this Policy period.

Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

*Property damage which occurred, existed, or commenced prior to the effective date of this Policy will be deemed to have happened prior to, and not during, the term of this insurance.*

42.     Under Texas law, the insurer has the burden to prove an exclusion to coverage

applies.   Here, Landmark can easily show that the pre-existing damage exclusion applies because

there is no dispute the Property sustained prior vandalism and theft losses, and damage from

Hurricane Harvey, all of which occurred prior to the inception of the Landmark Policy.

Accordingly, the Landmark Policy does not provide coverage for these prior losses and damage.

Despite the explicit exclusion for pre-existing loss and damage, Hope Haven and its Public

Adjuster improperly seek monies from Landmark for the pre-existing losses and damage.

43.     In addition, under Texas common law, there can be no coverage for the pre-existing

losses and damage under the known loss doctrine. "Insurance is designed to protect against

unknown, fortuitous risks, and fortuity is a requirement of all policies of insurance."  *Burlington*

*Ins. Co. v. Tex. Krishnas, Inc.*, 143 S.W.3d 226, 230 (Tex. App.-Eastland 2004, no pet.); *Scottsdale*

*Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App.-Dallas 2001, pet. denied). An insured cannot insure against something that has already begun and which is known to have begun. *Summers v. Harris*, 573 F.2d 869, 872 (5th Cir.1978). The fortuity doctrine precludes coverage for known losses. *Tex. Krishnas, Inc*., 143 S.W.3d at 230; *Travis*, 68 S.W.3d at 75. A "known loss" is one that the insured knew had occurred before the insured entered into the contract for insurance. *Burch v. Commonwealth County Mut*. Ins. Co., 450 S.W.2d 838, 840-41 (Tex.1970); *Tex. Krishnas, Inc*., 143 S.W.3d at 230; *Travi*s, 68 S.W.3d at 75.

44.     As CAM Houston's assignee, Hope Haven is subject to the known loss doctrine as well.

45.     In sum, Landmark seeks a declaration that the Landmark Policy does not provide coverage for Hope Haven's alleged damages included in its Public Adjuster's recent estimate for the losses and damage attributable to the  pre-existing vandalism and thefts of April 2018 and May 2018 that were reported to HPD, and the Hurricane Harvey damage of August 2017, and any other loss or damage that occurred prior to the inception of the Landmark Policy on September 14, 2018, because the Landmark Policy specifically precludes coverage for same, as does Texas law.

## C.  If CAM Houston Did Not Own the Property, the Claim is Invalid

46.     Under Texas law, a party must have an insurable interest in the insured property to recover under an insurance policy. *Jones v. Tex. Pac. Indem. Co*., 853 S.W.2d 791, 794 (Tex. App.—Dallas 1993, no writ). "The purpose of the insurable interest requirement is to discourage the use of insurance for illegitimate purposes." *Valdez v. Colonial Cnty. Mut. Ins. Co*., 994 S.W.2d 910, 914 (Tex. App.—Austin 1999, pet. denied).  An insurable interest exists when the insured "derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction.  If a claimant cannot suffer any

pecuniary loss or derive any benefit from the property, he has no insurable interest." *Jones*, 853 S.W.2d at 794.

47.     If CAM Houston no longer had an insurable interest in the Property at time of the alleged loss, it did not have a valid claim for coverage.

48.     Denenburg represented to HPD that he owned the Property at the time of the alleged loss.  If Denenburg owned the Property at the time of the alleged vandalism and theft loss, it can only mean that CAM Houston no longer owned the Property, and as such, CAM Houston no longer had an insurable interest in the Property.  Accordingly, without an insurable interest in the Property, CAM Houston's claim on Landmark was invalid, and its subsequent assignment of the alleged claim to Hope Haven in February 2019 was also invalid.  Accordingly, there can be no coverage for the claim for this reason as well.

**D.   The Protective Safeguards Endorsement May Preclude Coverage**

49.     The Landmark Policy contains the following pertinent endorsement:

**PROTECTIVE SAFEGUARDS** (RSG 94109 0116)
* * *
**SCHEDULE***

| Prem. No. | Bldg. No. | Protective Safeguard(s) | Applicable Cause(s) of Loss |
|---|---|---|---|
| 1 | 1 | P-9 | (1), (2) & (3) |

**Describe any "P-9":**
P-9     Warrant The building is secured with a padlock and a security guard patrolling the building daily

* * *

**Applicable Cause(s) of Loss:**

**(1)** Fire

**(2)** Theft or attempted theft, including any loss or damage which results from theft or attempted theft

**(3)** Vandalism

* * *

A.  **PROTECTIVE SAFEGUARDS**

**1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

**2.** The protective safeguards to which this endorsement applies are identified by the following symbols:

\* \* \*

**"P-9"** The protective system described in the Schedule.

B.   The following EXCLUSION is added:

We will not pay for loss or damage caused by or resulting from the Applicable Cause(s) of Loss specified in the Schedule, if prior to the loss, you:

a)   Knew of any suspension or impairment of any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

b)   Failed to maintain any protection safeguard listed in the Schedule above, and over which you had control, in complete working order.

\* \* \*

50.     The Landmark Policy's Declarations page also states the following:

| | |
|---|---|
| Warrants: | The building is secured with a padlock and a security guard patrolling the building daily<br>Failure to maintain warranted condition shall result in the following Cause(s) of Loss being excluded; Fire, Theft, Vandalism |
| Remarks: | Subject to satisfactory inspection. |

51.     The Protective Safeguards endorsement required that the Property be secured with a security guard patrolling the building daily.  CAM Houston warranted that this condition for coverage for a vandalism or theft claim was met.  In addition, if the warranted condition was not maintained, the endorsement further excluded coverage in the event of a vandalism or theft loss.

52.     After the alleged burglary on October 4, 2018, it was disclosed to Landmark that the Protective Safeguards condition for the vandalism and theft coverage that CAM Houston warranted may not have been met because the Property may not have been secured with a security guard patrolling the building daily.

53.     Accordingly, because the vandalism and theft coverage that CAM Houston contracted for with Landmark was contingent on there being a security guard patrolling the Property daily, if that had not been done, there is no coverage for the claim.  Hope Haven, as CAM Houston's assignee, is not entitled to receive vandalism and theft coverage for which CAM Houston did not contract.  Further, the Landmark Policy specifically excludes coverage for vandalism and theft at the Property if there was not a security guard patrolling daily.  If there was not a security guard patrolling the building daily, Hope Haven's claim is further excluded on that basis.

54.     Landmark reserves the right to assert additional Policy provisions and law as the case develops, as there may be other provisions and/or law that apply of which Landmark has no present knowledge.  Therefore, Landmark requests that the Court make such other and further declarations as may be appropriate.

## **PRAYER**

Landmark prays that Hope Haven be summoned to appear and answer herein, and that upon trial hereof, the Court declare the following:

A.     The Landmark Policy does not provide coverage for loss or damage that did not commerce during the policy period.  The Landmark Policy cannot provide coverage for Hope Haven's claim because Hope Haven cannot meet its burden to prove that the alleged vandalism and theft loss at issue commenced during the policy period.

B.     Even if Hope Haven could meet its burden to prove that the vandalism and theft loss at issue commenced during the policy period, the Landmark Policy explicitly excludes coverage for loss or damage that pre-existed the inception of the Landmark Policy on September 14, 2018.  Therefore, the Landmark Policy excludes coverage for Hope

Haven's alleged damages included in its Public Adjuster's recent estimate submitted to Landmark of over $4.9 million, which includes the losses and damage attributable to the pre-existing vandalism and theft losses of April 2018 and May 2018, and the Hurricane Harvey damage of August 2017, and any other loss or damage that occurred prior to the inception of the Landmark Policy on September 14, 2018.   Further, all the pre-existing losses and damage are precluded under the known loss doctrine.

C.      If CAM Houston did not own the Property at the time of the alleged vandalism and theft loss at issue, CAM Houston had no insurable interest in the Property, and as such, its claim on Landmark was invalid.   Accordingly, if CAM Houston had no insurable interest in the Property, its assignment of the alleged claim to Hope Haven was invalid, and therefore, there could be no coverage for Hope Haven's claim.

D.      The Landmark Policy does not provide coverage for loss or damage from vandalism and theft if the Property was not secured with a security guard patrolling daily. If the alleged vandalism and theft loss at issue occurred when there was not a security guard patrolling the Property daily, there is no coverage for Hope Haven's claim.

Landmark further asks that it be awarded such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,


By: /s/ *Jay W. Brown*
    **Jay W. Brown**
    Texas Bar No. 03138830
    jbrown@shackelford.law
    **Hilary C. Borow**
    Texas Bar. No. 00787106
    hborow@shackelford.law
    SHACKELFORD, BOWEN, MCKINLEY NORTON, LLP
    717 Texas Avenue, 27th Floor
    Houston, Texas 77002
    Telephone: (832) 415-1721
    Facsimile: (832) 415-1095

    **ATTORNEYS FOR PLAINTIFF LANDMARK**
    **AMERICAN INSURANCE COMPANY**